# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| ROBERT PREBLE and JOHN CASPER, | Case No. 25-cv-3006 (LMP/LIB) |
| Plaintiffs, |  |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| ITASCA COUNTY BOARD OF COMMISSIONERS; JOHN JOHNSON; CASEY VENEMA; CORY SMITH; TERRY SINDER; LARRY HOPKINS; BRETT SKYLES; JACOB FAUCHILD; JOE DASOVICH; and AUSTIN ROHLING, |  |
| Defendants. |  |

Robert Preble and John Casper, pro se.

Jessica E. Schwie, **Kennedy & Graven, Chartered, Minneapolis, MN**, for Defendants.

Plaintiffs Robert Preble and John Casper bring this action against a variety of elected and appointed public officials in Itasca County (the "County"), alleging that the officials violated their rights under the First, Fourth, and Fourteenth Amendments and the Minnesota Government Data Practices Act ("MGDPA").[1]  ECF No. 1.  Defendants move

---

[1]    Plaintiffs allege claims under the U.S. Constitution, but the U.S. Constitution does not itself provide private rights of action.  *See Washington v. Vaghn*, No. 14-cv-525 (JRT/JSM), 2014 WL 3687240, at *4 (D. Minn. July 24, 2014).  Rather, litigants suing state officials for constitutional violations must assert their claims under 42 U.S.C. § 1983.  *Id.* The Court therefore construes Plaintiffs' complaint to bring Section 1983 claims against Defendants for violations of the First, Fourth, and Fourteenth Amendments.  *See Jackson v. Salvation Army*, No. 19-cv-2662 (DWF/DTS), 2020 WL 1517673, at *2 (D. Minn. Feb. 12, 2020) (construing pro se complaint alleging claims under the U.S. Constitution to

to dismiss all claims.  ECF No. 36.  For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs' complaint revolves around two separate categories of conduct: (1) Defendants' treatment of Plaintiffs' written comments to the County Board of Commissioners ("Board"); and (2) Defendants' treatment of Plaintiffs' public records requests.

### *Written Comments*

In May and June 2025, Plaintiffs—both of whom reside in the County—submitted weekly written comments to the Board through an "official citizen input process."  ECF No. 1 ¶¶ 3, 5, 7.  It appears that comments submitted through this online "input process" were read aloud at the Board's public meetings.  *Id.* ¶¶ 7, 18.  Plaintiffs complain, however, that some of their comments "were either ignored entirely or selectively excluded from being read aloud" at the Board's public meetings "in violation of published policy."  *Id.* ¶ 7.  Plaintiffs suggest that "less politically critical" comments were read aloud at the Board's meetings.  *Id.* ¶ 8.  Preble specifically alleges that he submitted his comments using a pseudonym, but these comments "were never read or acknowledged by the County."  *Id.* ¶ 13.  Nevertheless, when Preble submitted a comment on July 15, 2025, under his own name that "was consistent in tone and subject matter with Plaintiffs['] earlier anonymous submissions," Defendant Brett Skyles, the County Administrator, read the comment into

be bringing those claims under Section 1983), *report and recommendation adopted*, 2020 WL 1515111 (D. Minn. Mar. 30, 2020).

the public record at the Board's public meeting. *Id.* ¶¶ 14–15. Plaintiffs therefore allege that the Board's decision to read or exclude comments is "based on identity which constitutes viewpoint discrimination." *Id.* ¶ 16. Based on these allegations, Plaintiffs bring claims under the First Amendment (for alleged viewpoint discrimination and retaliation), the Fourteenth Amendment (for alleged equal-protection and due-process violations), and the Fourth Amendment (for alleged compelled disclosures and unreasonable searches). *Id.* ¶¶ 17–21, 24–26.[2]

### Public Records Requests

Plaintiffs allege that they made several public records requests to Defendants Skyles (the County Administrator), Austin Rohling (the County Auditor), and Joe Dasovich (the County Sheriff). *Id.* ¶¶ 9–11. Plaintiffs allege that Skyles and Rohling denied their public records requests "with no written legal justification." *Id.* ¶¶ 9, 22. Plaintiffs further allege that Dasovich's office uses a public records request form that requires the requester to provide their identity, which Plaintiffs allege is illegal under state and federal law. *Id.* ¶¶ 10, 23. Based on these allegations, Plaintiffs bring claims under the Fourth Amendment and the MGDPA. *Id.* ¶¶ 22–26.

For their claims, Plaintiffs request compensatory damages and injunctive and declaratory relief. *Id.* at 4. Defendants move to dismiss the complaint in its entirety. ECF No. 35.

---

[2]    Plaintiffs' complaint includes two paragraphs numbered 17. Both are included in the citation here.

## ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiffs are proceeding pro se, the Court is mindful to liberally construe their filings. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

## I.    The Board Is Not an Entity Subject to Suit

Defendants first argue that Plaintiffs' claims against the Board must be dismissed because the Board is not an entity subject to suit. ECF No. 38 at 4–5. "[D]epartments or subdivisions" of a municipal government, like the Board, are not legal entities subject to suit. *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992); *see, e.g.*, *Shimer v. Shingobee Island Water & Sewer Comm'n*, No. 02-cv-953 (JRT/FLN), 2003 WL 1610788, at *3–4 (D. Minn. Mar. 18, 2003) (holding that a "subordinate entity" of a county is not "a proper defendant subject to suit" under Section 1983); *Seelye v. Fisher*, No. 06-cv-2848 (RHK/RLE), 2007 WL 951604, at *6 (D. Minn. Mar. 29, 2007) (same). Rather,

the appropriate defendant would be Itasca County itself.  *See Shimer*, 2003 WL 1610788, at *4.  Accordingly, all claims against the Board are dismissed.

## II.    The Complaint Does Not Impermissibly Lump Defendants Together

Defendants next argue that the remaining claims against them must be dismissed because they cannot "discern which claims apply to which defendants."  ECF No. 38 at 6–7.  "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."  *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012).  If a court and the defendants "are left to guess which Plaintiffs are asserting which claims against which Defendants," the complaint should be dismissed under Federal Rule of Civil Procedure 8.  *Tully v. Bank of Am., N.A.*, No. 10-cv-4734 (DWF/JSM), 2011 WL 1882665, at *6 (D. Minn. May 17, 2011).

The Court agrees with Defendants that Plaintiffs' complaint is far from a model of clarity.  But liberally construing Plaintiffs' complaint—as this Court must do, *Lamar*, 111 F.4th at 907 n.2—the Court is reasonably able to "connect the dots" and discern which claims are directed toward which Defendants.  *Judah v. Ovsak*, 550 F. Supp. 3d 687, 698 (D. Minn. 2021).

Count I of the Complaint—the First Amendment claims—alleges that Board members refused to read Plaintiffs' comments into the public record at the Board's public meetings.  ECF No. 1 ¶¶ 3, 5, 7, 13–15, 17–21, 24–26.  This count of the complaint is therefore properly directed toward the five Board members named as Defendants—John Johnson, Casey Venema, Cory Smith, Terry Sinder, and Larry Hopkins—and Skyles, who

as County Administrator is specifically alleged to have a role in reading comments into the public record at Board meetings.  *Id.* ¶ 14.

Count II of the Complaint—the Fourteenth Amendment claims—also alleges that Board members (and Skyles) refused to read Plaintiffs' comments into the public record at the Board's public meetings.[3]  *See id.* ¶¶ 20–21 (claiming that "selectively enforced submission procedures" violated the Equal Protection Clause); *id.* ¶¶ 16–17 (alleging that failing to read Plaintiffs' comments at the Board's meetings is "discriminatory" and "selective enforcement").  This count of the complaint is therefore properly directed toward Defendants Johnson, Venema, Smith, Sinder, Hopkins, and Skyles.

Count III of the Complaint—the MGDPA claim—alleges that Skyles, Rohling, and Dasovich improperly denied or frustrated Plaintiffs' public records requests.  *Id.* ¶¶ 9–11, 22–23.  This claim is therefore properly directed toward those three Defendants.

Count IV of the Complaint—the Fourth Amendment claim—alleges that it is improper to require a person to provide their identity when submitting a public records request or comments to the Board.  *Id.* ¶¶ 24–26.  Accordingly, to the extent that Plaintiffs challenge the requirement to provide their identity to submit comments to the Board, that claim is properly directed toward the five Board members who receive those comments: Johnson, Venema, Smith, Sinder, and Hopkins.[4]  To the extent that Plaintiffs challenge the

---

[3]    Indeed, this is how Defendants interpret the scope of Plaintiffs' Fourteenth Amendment claim.  *See* ECF No. 38 at 9.

[4]    Although Plaintiffs explicitly allege that Skyles has a role in reading public comments at Board meetings, ECF No. 1 ¶ 14, they do not allege that he has any

requirement to provide their identity to submit a public records request, it appears from the complaint that only Dasovich's office has imposed such a requirement. *Id.* ¶ 10. Accordingly, the Fourth Amendment claim is also properly directed against Dasovich.

However, Plaintiffs do not allege any purported wrongful conduct by Jacob Fauchild—the County Attorney—so the Court dismisses all claims against Fauchild.

## III. First Amendment Claims

### a. Discrimination

Plaintiffs allege that the Board's failure to read their anonymously submitted written comments at the Board's public meetings violated their First Amendment rights. ECF No. 1 ¶¶ 3, 5, 7, 13–15, 17–21, 24–26. Defendants offer only one sentence of analysis in opposition: "Citizens do not have a First Amendment right to compel government officials to express speech on their behalf at public meetings, especially when governments have broad authority to restrict speech in limited public forums." ECF No. 38 at 7–8. This passing sentence could be construed to advance two distinct arguments: (1) the Board's reading of public comments is government speech, or (2) the decision not to read Plaintiffs' written comments satisfies the restrictions applicable to a limited public forum. On the limited briefing provided to the Court, neither argument is persuasive at this juncture.

### i. Plaintiffs Do Not Allege Government Speech

Government speech "transmit[s] the government's own message," *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022), and is "exempt from First Amendment scrutiny,"

---

involvement in setting the requirement that a member of the public provide their name when submitting a comment to the Board.

*Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005).  Naturally, speech is more likely to be considered "government speech" when the public likely would perceive the government (as opposed to a private person) to be speaking and when the government actively shapes or controls the expression.  *Shurtleff*, 596 U.S. at 252.

Here, however, the complaint alleges that the Board simply repeats the public comments verbatim into the public record.  *See* ECF No. 1 ¶ 14.  An attendee of one of the Board's meetings would therefore understand that the comments read by the Board do not "transmit the government's own message," but rather express the views of a private citizen. *Shurtleff*, 596 U.S. at 252.  Nor is there any allegation that the Board "shape[s] or control[s]" the message expressed by the submitted comments; on the contrary, it appears that the Board does nothing to shape the message contained in those comments.  *Id.* Plaintiffs instead allege that the Board has "create[d] a forum for the expression of private speakers' views." *Id.*  That is not government speech.  *See Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009) (distinguishing between a government entity "speaking on its own behalf," which is government speech, from the government "providing a forum for private speech," which is not government speech).

### ii.    Plaintiffs Allege That the Board Created a Limited Public Forum

Having concluded that Plaintiffs' claims are not wholly exempt from First Amendment scrutiny, the Court must determine what type of forum, if any, the Board has created in opening a public comment period during public board meetings because "the type of forum frames the level of scrutiny" with which the Court must "examine any restrictions . . . placed on the forum." *Viewpoint Neutrality Now! v. Bd. of Regents of Univ.*

8

*of Minn.*, 109 F.4th 1033, 1039 (8th Cir. 2024) (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001)).  Defendants suggest that the public comment period is a limited public forum, ECF No. 38 at 7–8, and the Court agrees.

A limited public forum is one where the government "opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects."  *Bowman v. White*, 444 F.3d 967, 976 (8th Cir. 2006) (citation omitted).  Although neither Plaintiffs nor Defendants provide much context about the public comment period at the Board's meetings, the allegations plausibly allege that it is a time for Board members to hear from County residents on issues that are relevant to the Board's work.  *See* ECF No. 1 ¶ 5 (discussing comments submitted to the Board, including on issues such as the County's budget, health care expenditures, and resolution of criminal cases).  Courts both within this Circuit and around the country have concluded that similar public comment periods during public board meetings constitute limited public forums.  *See, e.g.*, *Moms for Liberty – Wilson Cnty., Tenn. v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 508 (6th Cir. 2025); *McDonough v. Garcia*, 116 F.4th 1319, 1326 (11th Cir. 2024); *Galena v. Leone*, 638 F.3d 186, 198–99 (3d Cir. 2011); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759–60 (5th Cir. 2010); *Steinberg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008); *Brooks v. Francis Howell Sch. Dist.*, 599 F. Supp. 3d 795, 803 (E.D. Mo. 2022).  And at least one court has explicitly held that the limited-public-forum analysis applies to a First Amendment claim where a plaintiff's submitted written comment to a public board was not read during the board's public comment period (that is, the exact same facts presented in the complaint).  *See Sanchez v. Gallagher*, No. 2:25-cv-00226-

MIS-GJF, 2025 WL 1642970, at *8–11 (D.N.M. June 10, 2025). On the present, barebones record in this case, the Court likewise concludes that the Board has created a limited public forum.

The next question, then, is whether Plaintiffs' allegations that the Defendants refused to read their anonymous comments at the Board's public meetings plausibly alleges a First Amendment violation. In general, the government has "more flexibility to regulate speech in limited public forums to facilitate the intended purposes of those forums." *Powell v. Noble*, 798 F.3d 690, 699 (8th Cir. 2015). To that end, when the government opens a limited public forum, "it may employ content-based restrictions to the use of that forum, but they must be both viewpoint neutral and reasonable in light of the forum's purpose." *Viewpoint Neutrality Now!*, 109 F.4th at 1039. The Court must determine whether the alleged restrictions on Plaintiffs' speech satisfy those requirements.

### 1. Plaintiffs Do Not Plausibly Allege Viewpoint Discrimination

Viewpoint discrimination occurs when the government discriminates against speech based on the "particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The government must therefore "abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* In their complaint, Plaintiffs first allege that their comments were not read into the public record because they were more "politically critical" than other comments that were read. ECF No. 1 ¶ 8. If true, the Board plainly would be engaging in the most pernicious form of viewpoint discrimination. *See*

*Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004) ("Suspicion that viewpoint discrimination is afoot is at its zenith when the speech restricted is speech critical of the government."). But later in the complaint, Preble alleges that he subsequently submitted the July 15 comment "consistent in tone and subject matter" with his earlier, critical comments, and that the July 15 comment was read into the public record at the Board's public meeting. ECF No. 1 ¶¶ 13–15. The difference? Preble had submitted the earlier comments with a pseudonym, while he submitted the July 15 comment with his real name. *See id.* Plaintiffs therefore argue that the County's decision not to read their comments is "based on identity which constitutes viewpoint discrimination." *Id.* ¶ 16.

These allegations do not plausibly demonstrate viewpoint discrimination. As an initial matter, Plaintiffs have not plausibly alleged that the Board refrains from reading their comments because those comments are more "politically critical." Plaintiffs openly admit that Preble's July 15 comment, which had the same "tone and subject matter" as his earlier, politically critical comments, was read into the record when he included his name with his comment. That allegation completely contradicts Plaintiffs' theory that the Board is attempting to suppress politically critical speech. When a "plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, No. 12 Civ. 4873(CM), 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012) (citation omitted); *cf. Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). Accordingly, Plaintiffs have not plausibly alleged that the Board refused to read their comments because those comments were politically critical.

What Plaintiffs have plausibly alleged is that the Board refused to read their submitted comments because Plaintiffs did not use their real names when submitting those comments. ECF No. 1 ¶¶ 13–16. But that is not viewpoint discrimination. Viewpoint discrimination exists when the "specific motivating ideology or the opinion or perspective of the speaker" is the reason for restricting speech. *Rosenberger*, 515 U.S. at 829. Plaintiffs' identities, however, are wholly distinct from their ideology, opinions, or perspectives. Their names alone tell the government nothing about their views on particular issues. Indeed, the Supreme Court has explicitly held that restrictions on speaker identity in a limited public forum are viewpoint neutral because the government may reserve such a forum "for certain groups," *id.*, and accordingly may "make distinctions in access on the basis of . . . speaker identity," *Christian Legal Soc'y Chapter of Univ. of Cal., Hastings Coll. of L. v. Martinez*, 561 U.S. 661, 681 (2010) (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 49 (1983)). Plaintiffs' allegations therefore implicate a viewpoint neutral restriction on speech.

### 2. Defendants Fail To Meet Their Burden To Show That the Board's Restriction Is Reasonable

Although the government may restrict access to a limited public forum on a viewpoint neutral basis (such as speaker identity), *id.*, that restriction still must be "reasonable in light of the forum's purpose," *Viewpoint Neutrality Now!*, 109 F.4th at 1039. The reasonableness inquiry does not require a restriction to "be the most reasonable or the only reasonable limitation." *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 335 (8th Cir. 2011) (quoting *Cornelius v. NAACP Legal Def.*

& *Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985)).  The reasonableness of a restriction on access is supported when "'substantial alternative channels' remain open for the restricted communication." *Id.* (quoting *Perry*, 460 U.S. at 53).

The Court must take as true Plaintiffs' allegation that the Board restricts reading written comments based on speaker identity.  *Gorog*, 760 F.3d at 792.  Here, however, Defendants provide no argument as to the reasonableness of that restriction.  Defendants do not explain why the Board might decide not to read written comments submitted under a pseudonym, why that decision is "reasonable in light of the forum's purpose," *Viewpoint Neutrality Now!*, 109 F.4th at 1039, or whether "'substantial alternative channels' remain open for the restricted communication," *Victory Through Jesus*, 640 F.3d at 335 (citation omitted).    Instead, Defendants assert—without citation—that "a First Amendment violation does not occur by mere virtue of a government official failing to read a public comment at a public meeting." ECF No. 38 at 8.  But it might, if the reason the government official did not read the comment was unreasonable "in light of the forum's purpose." *Viewpoint Neutrality Now!*, 109 F.4th at 1039.

A defendant moving for dismissal under Rule 12(b)(6) bears the burden of demonstrating its entitlement to dismissal.  *See* 5B Wright & Miller's Federal Practice & Procedure § 1357 (4th ed., Sept. 2025 update) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists."); *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("[E]very circuit court to address this issue . . . has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal.").  It is not this Court's job "to research the law to support [a party's] argument." *Viking Supply v. Nat'l*

*Cart Co.*, 310 F.3d 1092, 1099 (8th Cir. 2002) (citation omitted). Defendants' one-sentence

argument is insufficient to warrant dismissal of Plaintiffs' First Amendment claim at this

stage.[5]  Defendants are free to renew their argument with more robust briefing at a later

date.  For now, Plaintiffs' First Amendment claim against Johnson, Venema, Smith, Sinder,

Hopkins, and Skyles may proceed.

> **b.    Retaliation**

Plaintiffs also allege a First Amendment retaliation claim.  ECF No. 1 ¶ 19.  To

successfully plead a First Amendment retaliation claim, a plaintiff must allege that (1) he

"engaged in protected activity"; (2) the defendant took action against him that was

sufficiently serious to chill a person of ordinary firmness from engaging in protected

activity; and (3) the defendant took the adverse action "to retaliate for the protected

activity." *Zutz v. Nelson*, 601 F.3d 842, 848–49 (8th Cir. 2010) (citation omitted).  To satisfy

the third element, the "defendant's retaliatory motive must be a but-for cause of the

---

[5]    In another fleeting sentence, Defendants assert that "because Plaintiffs do not have
a clear constitutional right for government officials to express speech on their behalf,
qualified immunity shields all the individually named defendants from liability."  ECF
No. 38 at 8.  Defendants cannot simply gesture at qualified immunity and expect the Court
to flesh out that argument for them.  Because that single sentence contains no reasoned
analysis of the qualified-immunity doctrine, the Court will not address Defendants'
argument at this time. *See In re Vera T. Welte Testamentary Tr.*, 96 F.4th 1034, 1039 (8th
Cir. 2024) (explaining that a court is "not obliged to consider [a] perfunctorily raised,
undeveloped argument").  Defendants make similarly perfunctory qualified immunity
arguments for Plaintiffs' Fourteenth and Fourth Amendment claims. *See* ECF No. 38 at 11
("Plaintiffs' [Fourteenth Amendment] claim is insufficient to evade qualified immunity.");
*id.* at 12 ("[B]ecause of the unique nature of Plaintiffs' [Fourth Amendment] claim, they
have not alleged a violation of a clearly established constitutional right that would preclude
qualified immunity.").  The Court also will not consider those undeveloped arguments at
this juncture.

retaliation; a plaintiff cannot recover if the defendant would have taken the same adverse action even in the absence of the improper motive." *Gearin v. City of Maplewood*, 780 F. Supp. 2d 843, 856 (D. Minn. 2011) (citing *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007)).

Plaintiffs' theory of retaliation is not altogether clear, but it appears Plaintiffs allege that they engaged in protected activity by submitting politically critical comments to the Board and that the Board retaliated against them by refusing to read their comments at the Board's public meetings. ECF No. 1 ¶¶ 18–19. As to the first element of a retaliation claim, there is no question that Plaintiffs engaged in protected activity by submitting politically critical comments to the Board. *See Casey v. City of Cabool*, 12 F.3d 799, 803 (8th Cir. 1993) ("[A] citizen's right to be critical of government and government officials lies at the core of the principle of free speech."). The second element poses a much harder question, for the Court is not entirely persuaded that failing to read Plaintiffs' comments at the Board's meetings is sufficiently serious to "chill a person of ordinary firmness" from submitting such comments to the Board. *Zutz*, 601 F.3d at 848–49 (citation omitted). Bolstering that conclusion is the fact that Plaintiffs continued to submit politically critical comments to the Board after the Board declined to read Plaintiffs' anonymized comments. ECF No. 1 ¶¶ 5–8, 13–16. This suggests that even Plaintiffs themselves were not chilled from engaging in protected activity. *See Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (finding city council's and city administrator's "harassing comments" in response to the plaintiff's criticism was "insufficient to deter a person of ordinary firmness

from continuing to speak out," and highlighting that the plaintiff "continued to speak out against" the defendants "in the face of the[] comments" on "numerous occasions").

That said, even if the Board's decision not to read Plaintiffs' comments constituted retaliation, Plaintiffs have not plausibly alleged that their expression of politically critical comments was the "but-for cause of the retaliation." *Gearin*, 780 F. Supp. 2d at 856. As described above, Plaintiffs have not plausibly alleged that the Board declined to read their comments because of the comments' politically critical viewpoint. Plaintiffs therefore cannot establish a "causal connection" between the purported protected activity (expressing politically critical views) and the purported retaliation (declining to read Plaintiffs' comments). *Aldridge v. City of St. Louis*, 75 F.4th 895, 899 (8th Cir. 2023) (citation omitted). Plaintiffs' First Amendment retaliation claim is therefore dismissed.

## IV. Fourteenth Amendment Claims

Plaintiffs raise two claims under the Fourteenth Amendment: an equal protection claim and a due process claim. ECF No. 1 ¶¶ 20–21. The former must be dismissed, while the latter may proceed.

### a.    Equal Protection Claim

The Equal Protection Clause "generally requires the government to treat similarly situated people alike." *Minn. Majority v. Mansky*, 708 F.3d 1051, 1059 (8th Cir. 2013) (citation omitted). To survive dismissal, then, Plaintiffs must allege that Defendants "treated [them] differently than similarly situated people." *Id.*; *see Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("Absent a threshold showing that she is similarly situated

to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim.").

Plaintiffs allege that by reading submitted comments from other members of the public while refusing to read their comments, Defendants treated Plaintiffs "differently from similarly situated members of the public." ECF No. 1 ¶ 20. Defendants dispute that Plaintiffs are similarly situated to those other members of the public. ECF No. 38 at 9–10. "The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action." *Klinger*, 31 F.3d at 731. Here, the challenged government action is the Board's decision whether to read submitted written comments during the Board's public meetings. ECF No. 1 ¶¶ 16–17, 20–21. And as discussed above, Plaintiffs plausibly allege that they were treated differently from members of the public who included their real name with their written comments. ECF No. 1 ¶¶ 5–8, 13–16. The question, then, is whether Plaintiffs (who used a pseudonym to submit their written comments) are similarly situated to members of the public who included their real name with their comments.

Other than summarily asserting that they are "similarly situated"—a legal conclusion which the Court is not bound to accept as true, *Iqbal*, 556 U.S. at 678—the complaint is devoid of any factual allegations explaining how Plaintiffs are similarly situated "in all relevant respects" to those who submit comments with their real names. *Carter v. Arkansas*, 392 F.3d 965, 969 (8th Cir. 2004) (citation omitted). That pleading deficiency dooms Plaintiffs' equal protection claim. *See Satanic Temple v. City of Belle Plaine*, 475 F.Supp.3d 950, 962 (D. Minn. 2020) (holding that plaintiff failed to state an

equal protection claim when its complaint was "void of any allegation as to how [the plaintiff] and [the comparator group] are similarly situated" (emphasis omitted)).  That is particularly true because in the First Amendment context, courts have accepted that two groups of speakers in a limited public forum may not be similarly situated based on their identity.  *Martinez*, 561 U.S. at 681; *see Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, 233 F. Supp. 2d 647, 665 (D.N.J. 2002) (holding that plaintiff was not similarly situated to other groups allowed to post on school bulletin board because the school limited access to the bulletin board to certain groups, of which the plaintiff was not a member); *see also Cornelius*, 473 U.S. at 806 ("Control over access to a [limited public] forum can be based on . . . speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.").  Because Plaintiffs fail to allege that they are similarly situated "in all relevant respects" to members of the public who submitted comments to the Board with their real names, the Court must dismiss the equal protection claim.  *Carter*, 392 F.3d at 969.

### b.    Due Process Claim

Plaintiffs also allege that they were deprived of procedural due process when their comments were not read aloud because there was no "rejection notice or appeal process." ECF No. 1 ¶ 21.  A procedural due process claim is reviewed in two steps.  *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).  The first question is whether the plaintiff "has been deprived of a protected liberty or property interest." *Id.*  If so, the second question considers "what process is due." *Id.*

18

### i.        Plaintiffs Plausibly Allege Deprivation of a Liberty Interest

Defendants argue that Plaintiffs "fail to identify having citizen comments read aloud, or some other freedom, as a fundamental liberty interest."  ECF No. 38 at 11. Defendants again misunderstand the basis of Plaintiffs' claim.  In the Court's view, declining to read some written comments submitted by members of the public—but not other comments—is akin to the decision to cut a speaker off during the public comment portion of a public board meeting.  *See Sanchez*, 2025 WL 1642970, at *8–12 (drawing on cases involving ejecting or cutting off a speaker during a public comment portion of a public meeting to evaluate a First Amendment claim revolving around the decision not to read a written comment).  Declining to read a written comment submitted for the Board's public meeting has the same practical effect as declining to let a speaker take the microphone: both deny some members of the public the opportunity to be heard in a forum opened for that very expression.  *See Viewpoint Neutrality Now!*, 109 F.4th at 1039.  These are precisely the kinds of speech restrictions that implicate the First Amendment.  And it is why in cases where a plaintiff is restricted from speaking during the public comment portion of a public meeting, courts have recognized that the plaintiff has a "liberty interest in engaging in free speech in a limited public forum." *Vollmecke v. Indep. Sch. Dist.*, 753 F. Supp. 3d 792, 811 (W.D. Mo. 2024); *see Dyer v. Atlanta Indep. Sch. Sys.*, 426 F. Supp. 3d 1350, 1363 (N.D. Ga. 2019); *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 550 (D. Vt. 2014).

Of course, that does not mean that the Board must read every written comment it receives; after all, it may reasonably decide not to read some comments "based on the

subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand." *Victory Through Jesus*, 640 F.3d at 335. But Defendants are incorrect that a liberty interest created by the First Amendment is wholly inapplicable under these circumstances. The Court concludes that Plaintiffs have plausibly alleged a deprivation of that liberty interest.

### ii.    Defendants Have Not Met Their Burden To Show That Plaintiffs Received Sufficient Process As a Matter of Law

Having concluded that Plaintiffs have alleged a deprivation of a liberty interest, the Court must next consider "what process is due by balancing the specific interest that was affected, the likelihood that the [Defendants'] procedures would result in an erroneous deprivation, and the [Defendants'] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Senty-Haugen*, 462 F.3d at 886. Unfortunately, Defendants' briefing contains none of this analysis. Rather, Defendants chose to place their eggs in one basket by arguing that Plaintiffs were not deprived of a protected liberty interest. ECF No. 38 at 11. Having struck out on that argument, Defendants are left with no backup argument for dismissal. Because Defendants have not met their burden for dismissal on the procedural due process claim, that claim may proceed against Johnson, Venema, Smith, Sinder, Hopkins, and Skyles.

## V.    Fourth Amendment Claims

Plaintiffs allege that Johnson, Venema, Smith, Sinder, and Hopkins violated the Fourth Amendment by "designing systems that force the disclosure of names and

addresses" to "participate in government meetings."  ECF No. 1 ¶¶ 24–26.  Plaintiffs also allege that Dasovich violated the Fourth Amendment because his office's public records request form asks for the requester's name.  *Id.*  In Plaintiffs' view, Defendants' requests for their identities constitutes a "search" under the Fourth Amendment.  *Id.*

The Fourth Amendment guards against "unreasonable searches and seizures by the government."  *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013).  A search occurs under the Fourth Amendment when "the government violates a subjective expectation of privacy that society recognizes as reasonable."  *Kyllo v. United States*, 533 U.S. 27, 33 (2001).

The Court sincerely doubts that society would recognize a reasonable expectation of privacy in providing one's name and contact information in a public records request form or public comment form.  *See Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 185 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment.").  But even assuming such activity constituted a "search," there is no Fourth Amendment violation alleged here because Plaintiffs consented to the search by voluntarily providing their names and contact information to the government.[6]  A warrantless search does not violate the Fourth

---

[6]    Contrary to Plaintiffs' suggestion, a "search" does not occur simply because these forms request a person's name and identification.  Rather, any "search" occurs when an individual's "expectation of privacy" is violated by disclosing that information.  *Kyllo*, 533 U.S. at 33.  As the Supreme Court has held in the seizure context, the government "do[es] not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen," because the person "need not answer any question put to him" and "may decline to listen to the questions at all and may go on his way."  *Florida v. Royer*, 460 U.S. 491, 497–98 (1983).  Accordingly, the

Amendment if the subject of the search has provided his voluntary consent. *See United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1003 (8th Cir. 2010). By voluntarily disclosing their names and contact information to the government, Plaintiffs have relinquished any "expectation of privacy that society recognizes as reasonable." *Kyllo*, 533 U.S. at 33; *see Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) ("[S]tatements that [a person] exposes to the plain view of outsiders are not protected because no intention to keep them to himself has been exhibited." (internal quotation marks omitted)).

Plaintiffs try to get around their consent by alleging that they were "compelled" to disclose their identities to the government. ECF No. 1 ¶¶ 24, 26. It is true that consent to search must be voluntary, which means that it is "the product of an essentially free and unconstrained choice by its maker," rather than the "product of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 227 (1973). But Plaintiffs fall far short of alleging any facts resembling "duress or coercion." In determining voluntariness, "the personal characteristics of the individual who supposedly consented and the environment in which the consent allegedly occurred are relevant." *Cisneros-Gutierrez*, 598 F.3d at 1003. Here, Plaintiffs allege no facts relevant to their "personal characteristics" that might have made them susceptible to duress or coercion (such as age, intelligence, intoxication, and prior experience with the legal system). *See United States v. Escobar*, 389 F.3d 781, 785 (8th Cir. 2004). Nor do Plaintiffs allege that the "environment in which the alleged consent was secured" was coercive; for example,

---

appropriate inquiry is whether Plaintiffs' *provision* of their identities to the government violates the Fourth Amendment.

Plaintiffs do not allege that they were formally detained, threatened, physically intimidated, or searched in a secluded place. *Id.* Plaintiffs make much of the alleged fact that they could not submit a public records request or public comment without disclosing their identities. ECF No. 1 ¶¶ 24, 26. But as those allegations imply, it was Plaintiffs' "free and unconstrained choice" whether to submit a public comment or a public records request. *Schneckloth*, 412 U.S. at 225. No "implied threat or covert force" required them to do so. *Id.* at 228. Under those circumstances, Plaintiffs fail to allege a violation of the Fourth Amendment.[7] As such, the Fourth Amendment claim (Count IV) is dismissed in its entirety.

## VI.    MGDPA Claims

Finally, Plaintiffs allege violations of the MGDPA against Skyles, Rohling, and Dasovich. ECF No. 1 ¶¶ 22–23. This is a claim arising under Minnesota state law, so if the Court is to consider it, the claim must fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

A federal court can exercise supplemental jurisdiction over state-law claims if the federal and state-law claims "derive from a common nucleus of operative fact," such that

---

[7]    Nearly a month after Defendants' motion was taken under advisement, Plaintiffs sought leave to file a sur-reply to Defendants' reply brief. ECF No. 65. Sur-replies "are viewed with disfavor." *Cornice & Rose Int'l, LLC v. Four Keys, LLC*, 76 F.4th 1116, 1123 (8th Cir. 2023). That is for good reason, as sur-replies are often a "strategic effort by the nonmoving party to have the last word on a matter." *Ware v. Wind Transp. Sols., Inc.*, No. 4:23-cv-00300-AGF, 2025 WL 1178487, at *7 (E.D. Mo. Apr. 23, 2025) (citation omitted). Upon review of Plaintiffs' motion, the Court concludes that a sur-reply is unnecessary to properly resolve Defendants' motion. Plaintiffs' motion for leave to file a sur-reply is therefore denied.

the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). A more concrete formulation of the test, embraced by courts in this District, asks "whether there is, at minimum, a discernable overlap between the operative facts underlying the federal claims and those underlying the appended state claims." *Sacks v. Univ. of Minn.*, 600 F. Supp. 3d 915, 933 (D. Minn. 2022) (quoting *Hunt v. Up N. Plastics, Inc.*, 980 F. Supp. 1042, 1044 (D. Minn. 1997)) (collecting cases).

As a refresher, the remaining federal claims in this case are (1) a First Amendment claim against Johnson, Venema, Smith, Sinder, Hopkins, and Skyles (Count I); and (2) a Fourteenth Amendment procedural due process claim against Johnson, Venema, Smith, Sinder, Hopkins, and Skyles (Count II). Those claims revolve around the allegation that Skyles and members of the Board refused to read Plaintiffs' written comments during the Board's public meetings. ECF No. 1 ¶¶ 16–18, 20–21. But Plaintiffs' MGDPA claim is directed against other Defendants—Skyles, Rohling, and Dasovich—and there is little, if any, discernable factual overlap between the remaining federal claims (which involve the Board's decision not to read Plaintiffs' written comments) and the MGDPA claim (which involves three public officials' responses to Plaintiffs' separate public-records requests). *Id.* ¶¶ 9–11, 22–23. Indeed, proving the federal claims will require an entirely different body of evidence than the MGDPA claim will demand: evidence relevant to how County officials handle public records requests has nothing to do with how the Board decides to read public comments at public Board meetings. Simply put, "[t]he issues of fact and law raised by the claims are different, different evidence and witnesses will be used to support

the claims, and there is no logical relationship between the claims." *Bos. Sci. SciMed, Inc. v. ev3, Inc.*, No. 05-cv-651 (JNE/JSM), 2007 WL 2493117, at *7 (D. Minn. Aug. 29, 2007). That persuades the Court that supplemental jurisdiction is lacking over Plaintiffs' MGDPA claim. *See Ahle v. Veracity Rsch. Co.*, 641 F. Supp. 2d 857, 865 (D. Minn. 2009) (finding supplemental jurisdiction lacking when the federal and state-law claims "d[id] not require consideration of the same issues and evidence"). The Court will therefore dismiss the MGDPA claim (Count III) without prejudice "so that it may be considered, if at all, by the courts of Minnesota." *Hervey v. County of Koochiching*, 527 F.3d 711, 726 (8th Cir. 2008).

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiffs' Motion for Leave to File a Sur-Reply (ECF No. 65) is **DENIED**;

2.  Defendants' Motion to Dismiss (ECF No. 36) is **GRANTED IN PART and DENIED IN PART** as follows:

    a.  The retaliation claim in Count I of the complaint is **DISMISSED WITHOUT PREJUDICE**, and the discrimination claim in Count I of the complaint is **DISMISSED WITHOUT PREJUDICE** as against Defendants Itasca County Board of Commissioners and Jacob Fauchild;

    b.  The equal protection claim in Count II of the complaint is **DISMISSED WITHOUT PREJUDICE**, and the due process claim in Count II of the complaint is **DISMISSED WITHOUT PREJUDICE** as against Defendants Itasca County Board of Commissioners and Jacob Fauchild; and

    c. Counts III and IV of the complaint are **DISMISSED WITHOUT PREJUDICE** in their entirety.

Dated: December 2, 2025               <u>*s/Laura M. Provinzino*</u>
                                        Laura M. Provinzino
                                        United States District Judge