UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert Preble and John Casper,                    Case No. 25-cv-3006 (LMP/LIB)

Plaintiffs,

v.                                                                **ORDER**

Itasca County Board of Commissioners, et. al,

Defendants.

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636 and upon Plaintiffs' Motion to Compel for In Camera Review, (hereafter "Motion for In Camera Review") [Docket No. 105]. Following a Motions Hearing, the Court took Plaintiffs' Motion under advisement. (Minute Entry [Docket No. 123]).

For the reasons discussed below, Plaintiffs' Motion for In Camera Review, [Docket No. 105], is **DENIED**, but within fourteen (14) days of the date of this Order, Defendants shall produce a supplemental privilege log

## I.      Background

Plaintiffs Robert Preble and John Casper, proceeding pro se,[1] initiated this action on July 25, 2025, against a variety of elected and public officials in Itasca County. (See, Compl. [Docket No. 1]). Plaintiffs allege Defendants violated their constitutional rights under the First, Fourth, and

---

[1] The pro se moniker indicates that Plaintiffs are representing themselves in this action rather than proceeding through legal counsel. The Court is required to liberally construe the filings of pro se parties, such as Plaintiffs in the present case. See, Erickson v. Pardus, 551 U.S. 89, 93 (2007). Pro se litigants are, however, "not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see, Sgromo v. Target Brands Inc., No. 20-cv-1030 (JRT/LIB), 2020 WL 7626606, at *12–13 (D. Minn. Oct. 7, 2020), report and recommendation adopted, 2021 WL 632496 (D. Minn. Feb. 18, 2021), aff'd, No. 2021-1702, 2021 WL 4592277 (Fed. Cir. Oct. 6, 2021).

Fourteenth Amendments, as well as, violated the Minnesota Government Data Practices Act (hereafter "MGDPA"). (See, Id.).

Plaintiffs' allegations can be grouped into two categories: (1) Plaintiffs' written comments to the Itasca County Board of Commissioners (hereafter "County Board"); and (2) Plaintiffs' public record requests.

### A.  Plaintiffs' Written Comments

Throughout May and June 2025, Plaintiffs submitted weekly written comments to the County Board through the "official citizen input process." (Id. ¶ 5). These comments discussed concerns regarding alleged (1) financial burdens on taxpayers; (2) mishandling of fatal vehicular incidents and sexual assault cases involving minors; (3) discriminatory prosecution patterns by Itasca County Attorney Jacob Fauchald; (4) a lack of transparency in public budgeting; and (5) violations of Minnesota Statute Chapter 13. (Id.). A select number of these comments were made under pseudonyms due to Plaintiffs' fear of retaliation. (Id. ¶ 6).

Despite following the proper procedure for filing written comments, Plaintiffs allege that some of their comments were not read aloud at the County Board's public meetings "in violation of published policy." (Id. ¶¶ 7, 18). Plaintiffs suggest, however, that "less politically critical" comments from other citizens were routinely read aloud. (Id. ¶ 8).

On July 15, 2025, Plaintiff Robert Preble submitted a written comment, using his legal name, "consistent in tone and subject matter with Plaintiffs['] earlier anonymous submissions. The only difference was the inclusion of [Plaintiff Robert Preble's] legal name." (Id. ¶¶ 14, 15). This written comment was read aloud at the County Board meeting. (Id. ¶ 14). Plaintiffs allege this "shift in treatment" directly supports their contention that Defendants have a retaliatory and

discriminatory practice of suppressing anonymous input that is critical of Itasca County officials and policies. (Id. ¶ 17).

Based on these allegations, Plaintiffs allege constitutional violations under the First Amendment for viewpoint discrimination and retaliation (Count I); the Fourteenth Amendment for equal protection and due process violations (Count II); and the Fourth Amendment for compelling disclosures and conducting unreasonable constructive searches (Count IV). (Id. ¶¶ 17–21, 24–26).

### B. Plaintiffs' Public Record Requests

Plaintiffs allege they have made several data requests concerning Itasca County expenditures; County Board meeting transcripts; and Itasca County's public comment policy, to Defendant Brett Skyles, Itasca County Administrator; and Defendant Austin Rohling, Itasca County Auditor. (Id. ¶ 9). Plaintiffs contend Defendant Brett Skyles and Defendant Austin Rohling denied Plaintiffs' requests "without written justification. (Id.).

Plaintiffs further allege that the Itasca County Sheriff's Office, "led by" Defendant Joe Dasovich, Itasca County Sheriff, uses a public records portal which requires the individual requesting public records to disclose their identity in violation of Minn. Stat. § 13.03, subd. 3. (Id. ¶ 10). Plaintiff Robert Preble, due to his fear of potential retaliation, ultimately used a pseudonym to access data from the Sheriff's Office. (Id. ¶ 11).

Based on these allegations, Plaintiffs allege violations of the MGDPA (Count III), as well as, constitutional violations under the Fourth Amendment for compelling disclosures and conducting unreasonable constructive searches (Count IV). (Id. ¶¶ 22–26).

On October 10, 2025, Defendants moved to dismiss the complaint in its entirety. (See, Motion to Dismiss [Docket No. 36]). The Honorable United States District Court Judge Laura M.

Provinzino issued an Order, [Docket No. 71], granting in part, and denying in part, Defendants' Motion to Dismiss. Plaintiffs' First Amendment retaliation claim in Count I, Fourth Amendment equal protection claim in Count II, and the entirety of Count III and IV were dismissed without prejudice. (Id. ¶ 25, 26). Plaintiffs' First Amendment discrimination claim in Count I and Fourth Amendment due process claim in Count II were dismissed without prejudice as alleged against the County Board and Defendant Jacob Fauchald. (Id. ¶ 25). Plaintiffs' only remaining claims, as asserted against Defendants John Johnson, Casey Venema, Cory Smith, Terry Snyder, Larry Hopkins, Brett Skyles, and Joe Dasovich, are (1) a First Amendment claim alleging unreasonable restrictions in a limited public forum; and (2) a Fourteenth Amendment procedural due process claim alleging failure to provide adequate notice or an appeals process. (See, Id.).

During the course of this action, the parties have engaged in discovery.[2] As part of their discovery responses, on February 20, 2026, Defendants provided Plaintiffs with their privilege log. (See, Plfs.' Ex. C [Docket No. 108] at 13–15). Defendants' privilege log consists of eighteen emails. These emails are identified by the date and time they were sent, the respective author, the respective recipient(s), a description of the email, and an assertion of attorney-client privilege. (Id.). Each of the emails includes Jacob Fauchald, Itasca County Attorney, as either the author or the recipient. (Id.). The descriptions of each email, though varying in date of comment submission and pseudonym, are as follows: "Email correspondence following comment submitted on May 7, 2025, under the name Benjamin Franklin." (Id.). In addition to the privilege log, Defendants provided Plaintiffs with copies of the redacted emails which include the author, recipient(s), the

---

[2] Plaintiffs previously filed a Motion to Compel, [Docket No. 87], on February 10, 2026, which, generally, sought an Order compelling Defendants to provide complete and non-evasive discovery responses. On April 13, 2026, the undersigned issued an Order striking Plaintiffs' Motion without prejudice given Plaintiffs' failure to comply with Local Rule 37.1(b)–(d). (See, Id.).

date and time the email was sent, and the subject of the email. (Id. at 16–32).[3] The subject of each

email reads "RE: Online Form Submittal: Citizen eInput." (Id.).

Also on February 20, 2026, in addition to their privilege log, Defendants provided Plaintiffs

with the Declaration of Jennifer Sutherland, who is responsible for overseeing electronic services

relating to Itasca County. (Defs.' Ex. 2 [Docket No. 117-1] at 10, 11). In her affidavit, Ms.

Sutherland attests that the at-issue emails were "regarding citizen comment submissions." (Id. at

10).

On February 26, 2026, Plaintiffs served Defendants with a request for production

requesting, in relevant part, the production of unredacted copies of the emails identified in

Defendants' privilege log, including all attachments and embedded documents. (Defs.' Ex. 3

[Docket No. 117-1] at 73, 74). In the alternative, if Defendants continued to maintain privilege in

the emails, Plaintiffs requested the production of a supplemental privilege log that: (1) separately

identified each document; (2) stated the specific privilege asserted; (3) described the basis for the

privilege (including the legal advice sought or rendered); and (4) identified all recipients and

copied individuals. (Id.).

On March 27, 2026, Defendants objected to this request, stating:

Defendants will not produce unredacted copies of emails that they redacted
pursuant [to] attorney client privilege, nor will they describe the legal advice sought
or rendered, given that disclosing such information would defeat the purpose of
attorney client privilege. In addition, no supplemental privilege log is necessary.
The privilege log already (1) separately identifies the emails that Defendants
redacted; (2) the authors and recipients of the redacted emails; and (3) the privilege
asserted: attorney-client privilege.

---

[3] Notably, within the produced redacted emails, there are a few unredacted emails between County Board members
specifically asking whether or not comments will be read aloud at the County meetings. (Plfs.' Ex. C [Docket No.
108] at 28, 54, 49, 60, 63).

(Defs.' Ex. 4 [Docket No. 117-1] at 82). Immediately following Defendants' objection, Plaintiffs responded by email to reiterate their request for unredacted versions of the emails or a supplemental privilege log, as well as, to request Defendants' availability for a meet and confer regarding this issue. (Plfs.' Ex. A [Docket No. 108] at 2).

Defendants responded on April 3, 2026, again objecting to the production of the fifteen emails or a supplemental privilege log, and stating, in relevant part:

> In the privilege log, we already provide you with the recipients and senders of each of the emails that we redacted . . . . Jacob Fauchald is included in each of those emails . . . . You well know that Jacob Fauchald is the Itasca County Attorney. We expressly state that we are asserting attorney client privilege for each of the emails we redacted . . . . To the extent you would like greater detail on the nature of the emails submitted, we note that each of the emails we redacted are part of conversations between county officials in which they discuss handling written citizen comment.

(Plfs.' Ex. B [Docket No. 108] at 7–9). On April 3, 2026, and April 4, 2026, Plaintiffs responded, and again requested production of the emails or a supplemental privilege log. (See, Defs.' Exs. 5 and 6 [Docket No. 117]). Plaintiffs further asserted that they would be filing a Motion to Compel if this request had not been satisfied by the close of business on Wednesday, April 8, 2026. (Id.). Wednesday, April 8, 2026, passed without Defendants' production of the emails or a supplemental privilege log, and without Plaintiffs filing a motion to compel.

The parties met and conferred regarding this dispute on April 14, 2026. (Plfs.' Ex. C [Docket No. 108] at 11). At the meet and confer, Defendants confirmed they would not be producing the unredacted emails or a supplemental privilege log. (Mem. in Opp. [Docket No. 116] at 4). Plaintiffs, then, filed the present Motion for In Camera Review, [Docket No. 105], on April 24, 2026.

## II.  Standard Of Review

The court has the discretion to resolve discovery disputes. See, Corkrean v. Drake Univ., No. 421-cv-00336 (RGE/SHL), 2022 WL 18632, at \*2 (S.D. Iowa Jan. 3, 2022). In resolving this dispute, the court is guided by general principles applying to claims of privilege. First, the federal rules favor discovery of all relevant, non-privileged information. See, St. Paul Reinsurance Co., Ltd. v. Com. Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). Second, privileges are designed to protect interests and relationships that are considered sufficiently important to justify limitations on discovery. See, Muller v. Rogers, 534 N.W.2d 724, 727 (Minn. Ct. App. 1995). Third, statutory privileges are to be construed according to their fair meanings but need not be broadly construed. See, Larson v. Montpetit, 275 Minn. 394, 147 N.W.2d 580, 586 (Minn. 1966).

Federal Rule of Civil Procedure 26(b)(1) states:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts generally have construed Rule 26(b)(1) broadly. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see also, Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant"). However, "discovery may not be had on matters irrelevant to the subject matter involved in the pending action." Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2, 197 F.3d 922, 925 (8th Cir. 1999). The required threshold showing of relevance "is met if the information sought is 'relevant to the subject matter involved in the pending action.'" Orduno v. Pietrzak, No.

7

14-cv-1393 (ADM/JSM), 2016 WL 5853723, *3 (D. Minn. Oct. 5, 2016) (quoting <u>Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.</u>, 187 F.R.D. 578, 579 (D. Minn. 1999)).

"Generally, it is well established under common law that confidential communications between an attorney and a client are privileged and not subject to disclosure absent consent of the client." <u>United States v. Horvath</u>, 731 F.2d 557, 562 (8th Cir. 1984). "Attorney-client privilege is a 'long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client.'" <u>Triple Five of Minnesota, Inc. v. Simon</u>, 212 F.R.D. 523, 527 (D. Minn. 2002) (quoting <u>Diversified Indus., Inc. v. Meredith</u>, 572 F.2d 596, 601 (8th Cir. 1977)). Indeed, the attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). It exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." <u>Id.</u> "It is 'perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.'" <u>N. Dakota v. United States</u>, 64 F. Supp. 3d 1314, 1330 (D.N.D. 2014) (quoting <u>United States v. Bauer</u>, 132 F.3d 504, 510 (9th Cir. 1997)).

Rule 26(b)(5) requires a party withholding information that is otherwise discoverable by claiming that the information is privileged to "expressly make the claim" and to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." It is well-established that the party asserting the attorney-client privilege bears the burden of establishing it. <u>See</u>, <u>United States v. Williams</u>, 720 F.3d 674, 686 (8th Cir. 2013); <u>Hollins v. Powell</u>, 773 F.2d 191, 196 (8th Cir. 1985); <u>U.S. Bank Nat'l Assoc. v.</u>

PHL Variable Ins. Co., No. 12-cv-877 (JRT/TNL), 2016 WL 1258466, *2 (D. Minn. March 30, 2016). "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

"A party asserting the attorney-client privilege . . . has the burden to provide a factual basis for the privilege or protection." In re Zurn Pex Plumbing Prods. Liab. Litig., No. 8-cv-1958 (ADM/RLE), 2009 U.S. Dist. LEXIS 37837, 2009 WL 1178588, at *1 (D. Minn. May 1, 2009). The attorney-client privilege protects a communication that is (1) confidential; (2) between an attorney and client; and (3) for the purpose of obtaining legal services or advice. See, Inline Packaging, LLC v. Graphic Packaging International, No. 15-cv-3183 (ADM/LIB), 2017 U.S. Dist. LEXIS 225063, 2017 WL 9325027, at *4 (D. Minn. May 5, 2017).

This privilege may be waived if the client discloses the confidential communication to a third party. See, Id.; Shukh v. Seagate Tech., 872 F. Supp. 2d 851, 855 (D. Minn. 2012). This waiver is not always absolute. Exceptions to the waiver rule may exist under the joint representation doctrine or the common interest doctrine. See, gen., Shukh, 872 F. Supp. 2d at 855–56 (D. Minn. 2012).

Finally, it is important to emphasize the attorney-client privilege applies only to confidential communications made to facilitate legal services and does not apply where a lawyer acts as a scrivener or business advisor. See, Horvath, 731 F.2d at 561 (citations omitted); see also United States v. Spencer, 700 F.3d 317, 320 (8th Cir. 2012) (citation omitted) ("[W]hen an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply"); Diversified Indus. Inc., 572 F.2d at 602 ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.") (citations omitted).

**III.    Plaintiffs' Motion for In Camera Review. [Docket No. 105].**

Plaintiffs' Motion for In Camera Review seeks an Order of this Court compelling the production of unredacted copies of the emails identified in Defendants' February 20, 2026, Privilege Log, including all attachments and embedded documents, to the Court for in camera review to determine whether the asserted privilege applies. (See, Mem. in Supp. [Docket No. 106]). Plaintiffs additionally seek an Order awarding "their reasonable expenses in bringing this motion." (Id. at 3).

Plaintiffs contend Defendants' privilege log is deficient. (Id. at 2). Specifically, Plaintiffs argue Defendants' generic descriptions of each email "fails to identify the subject matter, the legal purpose of the communication, or any facts showing that the emails were made for the purpose of providing legal advice," which fails to satisfy Defendants' obligation under Rule 26(b)(5). (Id.).

In opposition, Defendants argue that their privilege log is in compliance with Rule 26(b)(5), and thus, no further production or supplemental privilege log is necessary. (See, Mem. in Opp. [Docket No. 116]). In support of this position, Defendants assert that (1) they included in the privilege log information on authorship, recipient(s), date, the nature of the material redacted, and the privilege asserted; (2) they have undertaken additional efforts to "make clear the privileged nature of what they withheld," including producing redacted versions of the emails; noting in correspondence to Plaintiffs "that each of the emails we redacted are part of conversations between county officials in which they discuss handling written citizen comment;" and in discovery responses, noting the county officials decided whether to read comments "'based on county policy, law, legal advice, and their education and experience;'" and (3) they have already given Plaintiffs "what they desire from the emails without disclosing privileged information" through a summary

written by Defendant Skyles in response to Plaintiffs' Interrogatory No. 18,[4] which explains why the citizen input comments were not read aloud. (Id. at 6–8).

Because Defendants are asserting that the emails listed in their Privilege Log are protected from discovery by the attorney-client privilege, Defendants bear the burden of establishing that the attorney-client privilege applies to protect the emails. See, Williams, 720 F.3d at 686; Hollins, 773 F.2d at 196; U.S. Bank Nat'l Assoc., 2016 WL 1258466, *2. In order to establish attorney-client privilege under federal common law, a party must show that the communication in question is:

> (1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding. A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.

MasterMine Software, Inc. v. Microsoft Corp., No. 13-cv-971 (PJS/TNL), 2015 U.S. Dist. LEXIS 193050, 2015 WL 12778417, at *8 (D. Minn. Aug. 5, 2015) (internal quotations and citations removed). With regards to the second factor in this test, "[t]he attorney-client privilege only shields communications that were intended to be confidential, so communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged." See, Id. (internal quotations omitted).

---

[4] Plaintiffs' Interrogatory No. 18 requested the identity of every individual who participated in the process of deciding whether or not any online submission would be read aloud at a County Board public meeting. In response, Defendant Brett Skyles provided a table depicting each individual comment Plaintiffs submitted, along with the county officials who decided that the comment should not be read aloud, as well as, the reason(s) for that decision to the best of their recollection. (Defs.' Ex. 8 [Docket No. 117-1] at 131–133). As for the reasoning, each comment lists, at least, that "[t]he sender did not include a true name and address. Therefore, the sender violated county policy governing the citizen input portal." (Id.). The only variance is in regard to a May 7, 2025, comment, which stated "[t]he comment constituted character assassination and slander," as an additional reason for not reading the comment aloud. (Id. at 131). Importantly, Plaintiffs erroneously equate this table to an amended privilege log, of which it is not.

11

On the face of Defendants' privilege log alone, Defendants have failed to sufficiently identify each communication to allow for Plaintiffs to adequately assess whether the attorney-client privilege applies.

As noted above, the descriptions of each email within Defendants' privilege log, though varying in date of comment submission and pseudonym, are as follows: "Email correspondence following comment submitted on May 7, 2025, under the name Benjamin Franklin." (See, Plfs.' Ex. C [Docket No. 108] at 13–15).

These descriptions are patently insufficient. As discussed above, the party asserting a privilege against discovery bears the initial burden. "Though there is no 'privilege log' rule[,] . . . the privilege log is a convention of modern legal practice designed to conform with the requirements of Federal Rule of Civil Procedure 26(b)(5)." United States v. Cameron-Ehlen Grp., Inc., No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063, at *4 (D. Minn. Apr. 2, 2019), aff'd sub nom. United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc., 2019 WL 3245003 (D. Minn. July 19, 2019) (quoting Bartholomew v. Avalon Capital Grp., Inc., 278 F.R.D. 441, 447 (D. Minn. 2011) (alterations in original). Rule 26, then, requires the party asserting a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(ii); see also In re Wirebound Boxes Antitrust Litig., 129 F.R.D. 534, 537 (D. Minn. 1990).

Defendants' bare descriptions simply do not provide sufficient information to allow Plaintiffs to assess the assertions of attorney-client privilege. Specifically, the descriptions fail to adequately demonstrate that each communication is directly related to seeking or receiving legal services or advice. See, Diversified Indus., Inc., 572 F.2d at 602 ("In order for the privilege to be

applicable . . . the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity."). As such, the descriptions provided for the entirety of the emails listed in Defendants' privilege log are all inadequate to meet the burden necessary to establish a privilege attaches.[5]

Therefore, the Court finds Defendants' privilege log inadequate under Fed. R. Civ. P. 26(b)(5)(A). However, the relief Plaintiffs request, in camera review of the withheld documents, is unwarranted. Where privilege log descriptions are inadequate, one remedy is amendment of the log. See, PaineWebber Group, Inc. v. Zinsmeyer Trusts Pshp., 187 F.3d 988, 993 n.1 (8th Cir. 1999) (holding that if a party asserts that privilege log descriptions are inadequate, that party should request supplementation of the log). In the present case, production of an amended privilege log is the proper remedy.

Accordingly, to the extent Plaintiffs' Motion seeks in camera review of the emails listed in Defendants' privilege log, Plaintiffs' Motion for In Camera Review, [Docket No. 105], is **DENIED**. Defendants are, however, ordered to produce a fulsome amended privilege log, including all the emails listed in the initial privilege log, for all documents they are withholding based upon an asserted privilege, within fourteen (14) days of the issuance of this Order.[6] The

---

[5] The Court notes one final issue, though a less pervasive one, in Defendants' privilege log. There is one specific redacted communication withheld on the basis of attorney-client privilege which was sent to two of the Defendants, as well as, a party who is not named in the present action. The Court acknowledges that this recipient shares the same county email designation as the Defendants' emails, however, when communications which are claimed to be protected by the attorney-client privilege are "copied to individuals whose identity and role [the party asserting the privilege] did not explain," such assertions fall short of the description required under Rule 26(b)(5)(A)(ii). Fed. R. Civ. P. 26(b)(5)(A)(ii). In such instances, a party can meet its burden under Rule 26(b)(5) by providing "a detailed privilege log stating the basis for the claimed privilege for each document in question, together with an accompanying explanatory affidavit . . . ." Rabushka ex rel. U.S. v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997). The Court notes, however, that an explanatory affidavit is not the only way to provide the necessary information to establish the claimed privilege.

[6] Importantly, Plaintiffs specifically reference only fifteen emails that are identified in Defendants' February 20, 2026, privilege log. (See, Mot. for In Camera Review [Docket No. 105]). There are, however, eighteen emails identified in

13

information provided in the amended privilege log must be sufficient to enable Plaintiffs to determine whether each element of the asserted privilege or protection is satisfied. See, Fed. R. Civ. P 26(b)(5)(A).[7]

### A. Request for Reasonable Expenses

Finally, Plaintiffs seek "an award of reasonable expenses pursuant to Federal Rule of Civil Procedure 37(a)(5)." (Mot. to Compel [Docket No. 105] at 1). At the May 28, 2026, Motions Hearing, Plaintiffs specifically requested $2,200 to reimburse them for the time spent preparing the at-issue Motion, as well as, the Plaintiffs' claimed lost wages and mileage spent to attend the Motions Hearing.

Pro se Plaintiffs cannot obtain attorney's fees for their own efforts. See, Tyler v. Salazar, No. 10-cv-1161 (JNE/LIB), 2012 WL 3113866, at *7 (D. Minn. June 27, 2012), report and recommendation adopted, 2012 WL 3113186 (D. Minn. July 31, 2012), aff'd, 504 F. App'x 538 (8th Cir. 2013); see also White v. Armontrout, 29 F.3d 357, 361 (8th Cir. 1994) (citing Coleman v. Turner, 838 F.2d 1004, 1005 (8th Cir.1988) (per curiam); Kay v. Ehrler, 499 U.S. 432, 435, 111 S.Ct. 1435, 1436, 113 L.Ed.2d 486 (1991) ("[t]he Circuits are in agreement . . . on the proposition that a pro se litigant who is not a lawyer is not entitled to attorney's fees . . . . we are . . . satisfied that [those cases] were correctly decided.") (emphasis in original). As such, because Plaintiffs are representing themselves, they are not entitled to attorney's fees, or any other miscellaneous expenses such as mileage or lost wages.

---

Defendants' privilege log. (See, Plfs.' Ex. C [Docket No. 108] at 13–15). Defendants are ordered to amend the entire privilege log, regardless of the number of emails claimed as privileged.

[7] The amended privilege log shall also, where not already done, identify all recipients (whether direct addressee, cc, or bcc) of the subject email and their role in or need for legal advice or services if sought.

Accordingly, to the extent Plaintiffs' Motion seeks an award of reasonable expenses pursuant to Federal Rule of Civil Procedure 37(a)(5), Plaintiffs' Motion for In Camera Review, [Docket No. 105], is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Compel for In-Camera Review, [Docket No. 105], is **DENIED**; but

2. Within fourteen (14) days of the date of this Order, Defendants shall produce a supplemental privilege log.

Dated: June 29, 2026

s/Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE

15