UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert Preble and John Casper,

Plaintiffs,

v.

Itasca County Board of Commissioners, et. al,

Defendants.

Case No. 25-cv-3006 (LMP/LIB)

**ORDER**

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636 and upon Plaintiffs' Motion to Compel Production of a Further Supplemental Privilege Log, (hereafter "Motion to Compel") [Docket No. 125]. Finding no hearing necessary, the Court took Plaintiffs' Motion under advisement on the papers. (Order [Docket No. 139]).

For the reasons discussed below, Plaintiffs' Motion to Compel, [Docket No. 125], is **DENIED**.

## I. Background

Plaintiffs Robert Preble and John Casper, proceeding pro se,[1] initiated this action on July 25, 2025, against a variety of elected and public officials in Itasca County. (See, Compl. [Docket No. 1]). Plaintiffs allege Defendants violated their constitutional rights under the First, Fourth, and

[1] The pro se moniker indicates that Plaintiffs are representing themselves in this action rather than proceeding through legal counsel. The Court is required to liberally construe the filings of pro se parties, such as Plaintiffs in the present case. See, Erickson v. Pardus, 551 U.S. 89, 93 (2007). Pro se litigants are, however, "not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see, Sgromo v. Target Brands Inc., No. 20-cv-1030 (JRT/LIB), 2020 WL 7626606, at *12–13 (D. Minn. Oct. 7, 2020), report and recommendation adopted, 2021 WL 632496 (D. Minn. Feb. 18, 2021), aff'd, No. 2021-1702, 2021 WL 4592277 (Fed. Cir. Oct. 6, 2021).

Fourteenth Amendments, as well as, violated the Minnesota Government Data Practices Act (hereafter "MGDPA"). (See, Id.).

Plaintiffs' allegations can be grouped into two categories: (1) Plaintiffs' written comments to the Itasca County Board of Commissioners (hereafter "County Board"); and (2) Plaintiffs' public record requests.

**A. Plaintiffs' Written Comments**

Throughout May and June 2025, Plaintiffs submitted weekly written comments to the County Board through the "official citizen input process." (Id. ¶ 5). These comments discussed concerns regarding alleged (1) financial burdens on taxpayers; (2) mishandling of fatal vehicular incidents and sexual assault cases involving minors; (3) discriminatory prosecution patterns by Itasca County Attorney Jacob Fauchald; (4) a lack of transparency in public budgeting; and (5) violations of Minnesota Statute Chapter 13. (Id.). A select number of these comments were made under pseudonyms due to Plaintiffs' fear of retaliation. (Id. ¶ 6).

Despite following the proper procedure for filing written comments, Plaintiffs allege that some of their comments were not read aloud at the County Board's public meetings "in violation of published policy." (Id. ¶¶ 7, 18). Plaintiffs suggest, however, that "less politically critical" comments from other citizens were routinely read aloud. (Id. ¶ 8).

On July 15, 2025, Plaintiff Robert Preble submitted a written comment, using his legal name, "consistent in tone and subject matter with Plaintiffs['] earlier anonymous submissions. The only difference was the inclusion of [Plaintiff Robert Preble's] legal name." (Id. ¶¶ 14, 15). This written comment was read aloud at the County Board meeting. (Id. ¶ 14). Plaintiffs allege this "shift in treatment" directly supports their contention that Defendants have a retaliatory and

discriminatory practice of suppressing anonymous input that is critical of Itasca County officials and policies. (Id. ¶ 17).

Based on these allegations, Plaintiffs allege constitutional violations under the First Amendment for viewpoint discrimination and retaliation (Count I); the Fourteenth Amendment for equal protection and due process violations (Count II); and the Fourth Amendment for compelling disclosures and conducting unreasonable constructive searches (Count IV). (Id. ¶¶ 17–21, 24–26).

**B. Plaintiffs' Public Record Requests**

Plaintiffs allege they have made several data requests concerning Itasca County expenditures; County Board meeting transcripts; and Itasca County's public comment policy, to Defendant Brett Skyles, Itasca County Administrator; and Defendant Austin Rohling, Itasca County Auditor. (Id. ¶ 9). Plaintiffs contend Defendant Brett Skyles and Defendant Austin Rohling denied Plaintiffs' requests "without written justification. (Id.).

Plaintiffs further allege that the Itasca County Sheriff's Office, "led by" Defendant Joe Dasovich, Itasca County Sheriff, uses a public records portal which requires the individual requesting public records to disclose their identity in violation of Minn. Stat. § 13.03, subd. 3. (Id. ¶ 10). Plaintiff Robert Preble, due to his fear of potential retaliation, ultimately used a pseudonym to access data from the Sheriff's Office. (Id. ¶ 11).

Based on these allegations, Plaintiffs allege violations of the MGDPA (Count III), as well as, constitutional violations under the Fourth Amendment for compelling disclosures and conducting unreasonable constructive searches (Count IV). (Id. ¶¶ 22–26).

On October 10, 2025, Defendants moved to dismiss the complaint in its entirety. (See, Motion to Dismiss [Docket No. 36]). The Honorable United States District Court Judge Laura M.

Provinzino issued an Order, [Docket No. 71], granting in part, and denying in part, Defendants' Motion to Dismiss. Plaintiffs' First Amendment retaliation claim in Count I, Fourth Amendment equal protection claim in Count II, and the entirety of Count III and IV were dismissed without prejudice. (Id. ¶ 25, 26). Plaintiffs' First Amendment discrimination claim in Count I and Fourth Amendment due process claim in Count II were dismissed without prejudice as alleged against the County Board and Defendant Jacob Fauchald. (Id. ¶ 25). Plaintiffs' only remaining claims, as asserted against Defendants John Johnson, Casey Venema, Cory Smith, Terry Snyder, Larry Hopkins, Brett Skyles, and Joe Dasovich, are (1) a First Amendment claim alleging unreasonable restrictions in a limited public forum; and (2) a Fourteenth Amendment procedural due process claim alleging failure to provide adequate notice or an appeals process. (See, Id.).

Throughout the course of discovery, and prior to the filing of the present motion, Plaintiffs have filed three motions to compel.

First, on February 10, 2026, Plaintiffs filed a Motion to Compel, [Docket No. 87], which, generally, sought an Order compelling Defendants to provide complete and non-evasive discovery responses. On April 13, 2026, the undersigned issued an Order, [Docket No. 103], striking Plaintiffs' Motion without prejudice given Plaintiffs' failure to comply with Local Rule 37.1(b)–(d). (See, Id.).

Second, on April 10, 2026, Plaintiffs filed a Motion to Compel, [Docket No. 101], which was nearly identical to their previous Motion. On April 13, 2026, the undersigned issued an Order, [Docket No. 104], striking Plaintiffs' Motion without prejudice given Plaintiffs' failure to comply with Local Rule 7.1(a) and (b) and Local Rule 37.1.

Third, on April 24, 2026, Plaintiffs filed a Motion to Compel for In Camera Review, [Docket No. 105], which sought an Order of this Court compelling the production of unredacted

copies of the correspondence identified in Defendants' February 20, 2026, Privilege Log to the Court for in camera review to determine whether the asserted privileges applied. (See, Plfs.' Mem. [Docket No. 106]). Following a Motions hearing, the undersigned issued an Order, [Docket No. 124], denying Plaintiffs' Motion to Compel, but ordering Defendants to produce a supplemental privilege log with sufficient information to enable Plaintiffs to determine whether each element of the asserted privilege or protection was satisfied, as well as, the identify of all authors and recipients of each subject email and their role in or need for the legal advice or services sought. (Order [Docket No. 124] at 13, 14).

In accordance with this Court's Order, on July 13, 2026, Defendants produced their Supplemental Privilege Log. (See, Plfs.' Ex. A [Docket No. 130]).

On July 14, 2026, Plaintiffs sent Defendants a "Meet-and-Confer Letter," alleging that Defendants' Supplemental Privilege Log again failed to provide sufficient factual information necessary for Plaintiffs to determine whether each at-issue communication consisted entirely of legal advice or whether they contained discoverable "administrative or factual communications." (Plfs.' Ex. C [Docket No. 130] at 1).

Defendants' counsel emailed their response on July 24, 2026, asserting the Supplemental Privilege Log contained sufficient descriptions of each withheld communication and adequately described the authors and recipients. (See, Plfs.' Ex. D [Docket No. 130]).

On July 27, 2026, Plaintiffs filed the present Motion to Compel, [Docket No. 125], arguing the unredacted portions of the email chains at-issue demonstrate "routine governmental administration," and, as such, Plaintiffs cannot assess whether the "predominant purpose of each withheld communication was to obtain or provide legal advice." (Mem. in Supp. [Docket No. 131] at 1).

## II. Standard Of Review

The court has the discretion to resolve discovery disputes. See, Corkrean v. Drake Univ., No. 421-cv-00336 (RGE/SHL), 2022 WL 18632, at *2 (S.D. Iowa Jan. 3, 2022). In resolving this dispute, the court is guided by general principles applying to claims of privilege. First, the federal rules favor discovery of all relevant, non-privileged information. See, St. Paul Reinsurance Co., Ltd. v. Com. Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). Second, privileges are designed to protect interests and relationships that are considered sufficiently important to justify limitations on discovery. See, Muller v. Rogers, 534 N.W.2d 724, 727 (Minn. Ct. App. 1995). Third, statutory privileges are to be construed according to their fair meanings but need not be broadly construed. See, Larson v. Montpetit, 275 Minn. 394, 147 N.W.2d 580, 586 (Minn. 1966).

Federal Rule of Civil Procedure 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts generally have construed Rule 26(b)(1) broadly. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see also, Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant"). However, "discovery may not be had on matters irrelevant to the subject matter involved in the pending action." Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2, 197 F.3d 922, 925 (8th Cir. 1999). The required threshold showing of relevance "is met if the information sought is 'relevant to the subject matter involved in the pending action.'" Orduno v. Pietrzak, No.

14-cv-1393 (ADM/JSM), 2016 WL 5853723, *3 (D. Minn. Oct. 5, 2016) (quoting Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn., 187 F.R.D. 578, 579 (D. Minn. 1999)).

"Generally, it is well established under common law that confidential communications between an attorney and a client are privileged and not subject to disclosure absent consent of the client." United States v. Horvath, 731 F.2d 557, 562 (8th Cir. 1984). "Attorney-client privilege is a 'long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client.'" Triple Five of Minnesota, Inc. v. Simon, 212 F.R.D. 523, 527 (D. Minn. 2002) (quoting Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 601 (8th Cir. 1977)). Indeed, the attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). It exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id. "It is 'perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.'" N. Dakota v. United States, 64 F. Supp. 3d 1314, 1330 (D.N.D. 2014) (quoting United States v. Bauer, 132 F.3d 504, 510 (9th Cir. 1997)).

Rule 26(b)(5) requires a party withholding information that is otherwise discoverable by claiming that the information is privileged to "expressly make the claim" and to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "A party asserting the attorney-client privilege . . . has the burden to provide a factual basis for the privilege or protection." In re Zurn Pex Plumbing Prods. Liab. Litig., No. 8-cv-1958 (ADM/RLE), 2009 U.S. Dist. LEXIS 37837, 2009 WL 1178588, at *1 (D. Minn.

May 1, 2009). The attorney-client privilege protects a communication that is (1) confidential; (2) between an attorney and client; and (3) for the purpose of obtaining legal services or advice. See, Inline Packaging, LLC v. Graphic Packaging International, No. 15-cv-3183 (ADM/LIB), 2017 U.S. Dist. LEXIS 225063, 2017 WL 9325027, at *4 (D. Minn. May 5, 2017).

This privilege may be waived if the client discloses the confidential communication to a third party. See, Id.; Shukh v. Seagate Tech., 872 F. Supp. 2d 851, 855 (D. Minn. 2012). This waiver is not always absolute. Exceptions to the waiver rule may exist under the joint representation doctrine or the common interest doctrine. See, gen., Shukh, 872 F. Supp. 2d at 855–56 (D. Minn. 2012).

Finally, the attorney-client privilege applies only to confidential communications made to facilitate legal services and does not apply where a lawyer acts as a scrivener or business advisor. See, Horvath, 731 F.2d at 561 (citations omitted); see also United States v. Spencer, 700 F.3d 317, 320 (8th Cir. 2012) (citation omitted) ("[W]hen an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply"); Diversified Indus. Inc., 572 F.2d at 602 ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.") (citations omitted).

**III. Plaintiffs' Motion to Compel. [Docket No. 125].[2]**

Plaintiffs' Motion to Compel seeks an Order of this Court compelling Plaintiffs to produce

[2] On August 12, 2026, Plaintiffs filed a Motion to Supplement the Record for Newly Obtained Evidence, [Docket No. 138]. Plaintiffs sought to supplement the record now before the Court in relation to Plaintiffs' Motion to Compel with deposition transcripts and other related documents. (See, Mot. to Supp. [Docket No. 138]). Upon preliminary review of Plaintiffs' Motion and the accompanying exhibits, the undersigned determined that Defendant Skyles' deposition transcript may have some applicability to the underlying Motion. (Order [Docket No. 139]). As such, the Court concluded it would consider Defendant Skyles' deposition transcript, as well as, Defendant Skyles' errata sheet, as filed by Plaintiffs, to obtain the full context and avoid any prejudice to Defendants. (Id.). As such, the Court has reviewed and considered Defendant Skyles' deposition transcript and the accompanying errata sheet to the extent they were relevant, if at all, to the sufficiency of Defendants' Supplemental Privilege Log.

another supplemental privilege log including more factual information regarding whether the predominant purpose of the withheld communications was to obtain or provide confidential legal advice. (See, Mot. to Compel [Docket No. 125]). In the alternative, Plaintiffs seek an Order compelling the production of the withheld communications for in camera review. (Id.).

In opposition, Defendants argue that their Supplemental Privilege Log is in compliance with Rule 26(b)(5), specifically in relation to their descriptions of privileged communications, as well as, their identification of the authors and recipients of the at-issue emails, and thus, no further production or supplemental privilege log is necessary. (See, Mem. in Opp. [Docket No. 135]).

As noted above, the Federal Rules of Civil Procedure require that a party making a privilege claim must expressly make the claim and describe the nature of the items to which privilege is claimed such that other parties and the Court may assess the claim. Fed. R. Civ. P. 26(b)(5)(A).

Because Defendants are asserting that the emails listed in their Supplemental Privilege Log are protected from discovery by the attorney-client privilege, Defendants bear the burden of establishing that the attorney-client privilege applies to protect the emails. See, Williams, 720 F.3d at 686; Hollins, 773 F.2d at 196; U.S. Bank Nat'l Assoc., 2016 WL 1258466, *2. In order to establish attorney-client privilege under federal common law, a party must show that the communication in question is:

> (1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding. A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.

MasterMine Software, Inc. v. Microsoft Corp., No. 13-cv-971 (PJS/TNL), 2015 U.S. Dist. LEXIS 193050, 2015 WL 12778417, at *8 (D. Minn. Aug. 5, 2015) (internal quotations and citations removed). With regards to the second factor in this test, "[t]he attorney-client privilege only shields

communications that were intended to be confidential, so communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged." See, Id. (internal quotations omitted).

In the present case, the Court finds that Defendants' Supplemental Privilege Log is not facially deficient as it provides descriptions sufficient to enable Plaintiffs to determine whether each element of the asserted privilege is satisfied and identifies all authors and recipients of the subject emails and, when applicable, their role in or need for legal advice or services. See, Fed. R. Civ. P 26(b)(5)(A).

For example, the first email in Defendants' Supplemental Privilege Log lists the author as Defendant Skyles, and the recipients as County Attorney Fauchald and Defendant Venema. (Plfs.' Ex. A [Docket No. 130] at 2). The Log then lists the asserted privilege as attorney-client, and includes the following description:

> E-mail soliciting legal advice on addressing May 7, 2025, comment submitted under the name Benjamin Franklin. *Second Sutherland Decl. at 000044-000045*. County Administrator Skyles and Commissioner Venema sought legal advice to respond to the email in their official roles with the County.

(Id.). Importantly, each of the descriptions accompanying the rest of the withheld communications listed in Defendants' Supplemental Privilege Log mirror this description, but provide details specific to each corresponding email. (See, Plfs.' Ex. A [Docket No. 130]). Based on this information, Plaintiffs are clearly able to assess the applicability of the attorney-client privilege. As such, Defendants' Supplemental Privilege Log adequately "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed" as required under Rule 26(b)(2)(A).

One additional issue warrants brief discussion. Plaintiffs specifically take issue with the following entry in Defendants' Supplemental Privilege Log given the at-issue email was forwarded to an individual who is not an attorney and is not named in the present action:

| | | | | |
|---|---|---|---|---|
| May 27, 2025, at 8:48 AM | **From:** County Attorney Jacob Fauchald | **To:** County Administrator Brett Skyles and County Commissioner Casey Venema<br>**CC:** County Commissioner Larry Hopkins<br>**FW to:** Deputy Clerk of County Board/Deputy Administrator Shelley Kebart | Email debate and discussion re: legal advice provided re: on-line portal, *Id. at 000070, 000074,* resulting in directive to conduct further research for use in further formulating legal opinion. *Id. at 000078.* | Attorney-Client Privilege |

(Plfs.' Ex. A [Docket No. 130] at 5).

Defendants contend this email retained its privileged classification given Defendant Skyles disseminated the communication to Deputy Clerk of County Board/ Deputy Administrator Shelley Kebart, a person who "need[ed] to know its contents." (Mem. in Opp. [Docket No. 135] at 9) (quoting Diversified Industries, Inc., 572 F.2d at 609–10). In support of this assertion, Defendants filed the Declaration of Brett Skyles, [Docket No. 136]. Defendant Skyles specifically attested that:

> On May 29, 2025, I forwarded my May 26-27 emails with County Attorney Fauchald to Board Clerk/Deputy Administrator Shelley Kebart . . . . When I forwarded her those prior emails, I directed her to "search the board record and see when and what they approved for citizen input." . . . In doing so, I did not intend to waive the confidentiality of my May 26-27 emails with County Attorney Fauchald. Rather, I believed that the prior emails provided necessary information for her to execute my directive.

(Decl. of Brett Skyles [Docket No. 136] ¶ 3) (citations omitted).

Defendants are correct in that the attorney-client privilege extends to communications directed to employees of an entity, or in this case, a County. Specifically, "[o]nce a privilege covers

a communication, the privilege is not ordinarily waived when corporate employees retransmit advice from an attorney internally, so long as the employee to whom the information is transmitted needs to know it." Oxygenator Water Techs., Inc. v. Tennant Co., No. 20-cv-0358 (KMM/HB), 2022 WL 22886713, at *8 (D. Minn. Mar. 31, 2022) (citing Hudock v. LG Elecs. U.S.A., Inc., Case No. 16-cv-1220 (JRT/KMM), 2019 WL 5692290, at 3 (D. Minn. Nov. 4, 2019)); Tekstar Comm'ns, Inc. v. Sprint Comm'ns Co. L.P., No. 08-cv-1130 (JNE/RLE), 2009 WL 10711789, at *5 (D. Minn. June 18, 2009) ("Nonetheless, a corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having a need to know of the communications are confidential for purposes of the attorney-client privilege."); Fair Isaac Corp. v. Experian Information Solutions, Inc., No. 06-cv-4112 (ADM/JSM), 2009 WL 10677479, at *21 (D. Minn. Mar. 23, 2009) ("[C]ommunications retain their privileged status within a corporation if an employee conveys legal advice received from counsel to other employees or officers of the corporation on a need to know basis.").

Defendant Skyles' Declaration explicitly states that he forwarded County Attorney Jacob Fauchald's advice to Ms. Kebart with the belief that the emails were necessary for her to carry out Defendant Skyles' directive to "search the board record and see when and what they approved for citizen input." (Decl. of Brett Skyles [Docket No. 136] ¶ 3). As such, attorney-client privilege was not waived upon Ms. Kebart receiving confidential communications.

Accordingly, Plaintiffs' Motion to Compel, [Docket No. 125], is **DENIED**.[3]

[3] The Court notes one final issue for the sake of clarity: Plaintiffs argue that Ms. Kebart, as well as, Amanda Schultz who works in human resources for the County, were listed as recipients in "every subsequent email" throughout the redacted email chain found at Bates 000043–00045. (Mem. in Supp. [Docket No. 130] at 1). Plaintiffs are incorrect. Ms. Kebart is only a recipient to the automated "Citizen eInput" emails, as well as, the forwarded communication from Defendant Skyles, and Ms. Schultz is only a recipient to the automated "Citizen eInput" emails. (See, Decl. of Nicholas Smoger [Docket No. 117-1]). Importantly, Defendants have not withheld any portion of, nor have they claimed any privilege for, the "Citizen eInput" emails. As such, Plaintiffs' contention that including Ms. Kebart and

## IV. CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Production of a Further Supplemental Privilege Log, [Docket No. 125], is **DENIED**.

Dated: September 4, 2026

/s/Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE

---

Ms. Schultz on earlier, non-privileged emails somehow negates or casts doubt on the attorney-client privilege claimed over subsequent emails, emails which do not include Ms. Kebart and Ms. Schultz, is unfounded.